No. 2013-1176

# In the United States Court of Appeals
# For The Federal Circuit

INTERNATIONAL CUSTOM PRODUCTS, INC.,

*Plaintiff-Appellee,*

v.

UNITED STATES,

*Defendant-Appellant.*

On Appeal from the United States Court of International Trade
In Case No. 07-CV-0318, Hon. Gregory W. Carman, Judge

## CORRECTED BRIEF FOR PLAINTIFF-APPELLEE
## INTERNATIONAL CUSTOM PRODUCTS, INC.

Gregory H. Teufel, Esq.
Jeremy L.S. Samek, Esq.
Eckert, Seamans, Cherin & Mellott , LLC
44TH Floor, U.S. Steel Tower
600 Grant Street
Pittsburgh, PA  15219
(412) 566-6000

*Counsel for Appellee*

Form 9

FORM 9.  Certificate of Interest

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

International Custom Products, Inc. v. United States

No. 2013-1176

### CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)
appellant, International Custom PRoducts, Inc. certifies the following (use "None" if applicable; use extra sheets if necessary):

1.      The full name of every party or amicus represented by me is:
International Custom Products, Inc.

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:
International Custom Products, Inc.

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:
None

4. ☑  The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:
Gregory H. Teufel, Esq. and Jeremy L.S. Samek, Esq. of the law firm
Eckert Seamans Cherin and Mellott, LLC

1/31/2013
Date

Signature of counsel

Gregory H. Teufel
Printed name of counsel

Please Note: All questions must be answered
cc: Barbara S. Williams, Esq.

124

# **TABLE OF CONTENTS**

CERTIFICATE OF INTEREST PURSUANT TO RULE 47.4(b) ..........................i

TABLE OF CONTENTS.......................................................................... ii

TABLE OF AUTHORITIES ...................................................................v

STATEMENT AS TO RELATED CASES PURSUANT TO RULE 47.5 .......... viii

STATEMENT AS TO JURISDICTION ................................................1

STATEMENT OF THE ISSUES.........................................................1

STATEMENT OF THE CASE............................................................1

STATEMENT OF THE FACTS ........................................................3

      A.     History as to obtaining the Ruling and importing white sauce. ............3

      B.     The Notice of Action. ..........................................................5

      C.     The Entry at issue. ..............................................................8

      D.     Conformity of the Entry at issue with the Ruling. ...............................9

      E.     Accurate information provided in Ruling request.................................9

      F.     The deliberative process leading to the Notice of Action and effective retroactive revocation of the Ruling....................................................12

      G.     Subsequent prospective revocation of the Ruling..............................15

      H.     ICP's Complaint. ..............................................................16

SUMMARY OF ARGUMENT ...........................................................19

ARGUMENT ..................................................................................................20

I.     The trial court correctly held that the Notice of Action in effect
       revoked the Ruling, contrary to law. ..................................................20

       A.     The Notice of Action was an "interpretive ruling or
       decision." ..............................................................................................20

              1.     The purpose of Section 1625 is to provide security,
                     stability, and transparency. .............................................22

              2.     To hold a Notice of Action could never constitute an
                     "interpretive ruling or decision" would thwart the
                     purpose of Section 1625. .................................................23

       B.     The Government's various arguments against finding that the
              notice of action was an "interpretive ruling or decision" are
              unavailing. .....................................................................................25

              1.     The similar language of Section 1625(a) does not limit
                     the scope of Section 1625(c). .........................................25

              2.     The legislative history does not support the
                     Government's narrow construction of "interpretive ruling
                     or decision." ....................................................................26

              3.     A proper notice of action should not and usually would
                     not come within the purview of Section 1625(c), but this
                     one did. ............................................................................27

              4.     The Government's arguments regarding the potential
                     practical impact of judicial scrutiny of notices of action
                     under Section 1625(c) should not sway this Court .........30

              5.     The merger concept does not help the Government's
                     argument ...........................................................................32

              6.     The Government's arguments would foreclose any means
                     of challenging improper revocation of rulings in violation
                     of Section 1625(c). ..........................................................33

II.    The Government misapprehends the purpose of a complaint and seeks unwarranted relief..................................................................................35

CONCLUSION ...................................................................................................38

PROOF OF SERVICE PURSUANT TO RULE 25(d)

CERTIFICATE OF COMPLIANCE PURSUANT TO RULE 32(a)(7)

## TABLE OF AUTHORITIES

### Cases

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) ..........................................36

Calif. Indus. Prods., Inc. v. United States, 350 F.Supp.2d 1135 (Ct. Int'l Trade 2004), *aff'd*, 436 F.3d 1341 (Fed.Cir. 2006)...................................................23

Cal. Indus. Prods., Inc. v. United States, 436 F.3d 1341 (Fed.Cir. 2006) .........21, 26

Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984).......20

Clarendon Mktg., Inc. v. United States, 144 F.3d 1464, 1467 (Fed. Cir. 1998) .....15

Conley v. Gibson, 355 U.S. 41, 47 (1957)..................................................................36

Conn. Nat'l Bank v. Germain, 503 U.S. 249 (1992) ...............................................27

Dow Chemical Co. v. United States, 647 F.Supp. 1574 (1986) ..............................32

Glaxo Group Ltd. v. TorPharm, Inc., 153 F.3d 1366, 1371 (Fed.Cir. 1998) ..........37

Int'l Custom Prods., Inc. v. United States, 374 F.Supp.2d 1311 (Ct. Int'l Trade 2005) ("ICP I"), *rev'd, vacated*, 467 F.3d 1324 (Fed. Cir. 2006) ....................................................................................................*passim*

Int'l Custom Prods., Inc. v. United States, Court No. 05-00509 (Ct. Int'l Trade Sept. 15, 2005) ("ICP II") ........................................................................................7

Int'l Custom Prods., Inc. v. United States, 549 F.Supp.2d 1384 (Ct. Int'l Trade 2008). ...............................................................................3, 12, 14, 20

Precision Specialty Metals, Inc. v. United States, 182 F.Supp.2d 1314 (Ct. Int'l Trade 2001)...........................................................................................22, 23

Sea-Land Serv., Inc. v. United States, 239 F.3d 1366 (Fed.Cir. 2001) ...................23

Shapiro v. United States, 335 U.S. 1, 31 (1948)..................................................21, 24

Timex V.I., Inc. v. United States, 157 F.3d 879 (Fed.Cir. 1998) ...........................21

**Statutes, Rules, and Regulations**

Customs Modernization Act, Pub.L. 103-182 ...................................................22, 25

Harmonized Tariff Schedules of the United States

    Subheading 0405.20.30 .............................................................4, 5, 28, 29, 30

    Subheading 2103.90.90 ..............................................................2, 4, 5, 28, 36

19 U.S.C. § 1514(a) ........................................................................................32

19 U.S.C. § 1625 ............................................................................................19

19 U.S.C. § 1625(a) ..................................................................................25, 26

19 U.S.C. § 1625(c) ..................................................................................*passim*

19 U.S.C. § 1625(c)(1) .............................................................................*passim*

28 U.S.C. § 1581(a) .................................................................................*passim*

28 U.S.C. § 1581(i) .........................................................................19, 33, 34

19 C.F.R. § 152.2 ........................................................................................6, 27, 31

19 C.F.R. § 177.9 .....................................................................................*passim*

19 C.F.R. § 177.12 .........................................................................................27

Federal Rule of Civil Procedure 8(a)(2) ..............................................................35

U.S. Ct. Int'l Trade Rule 8(a)(2).......................................................................35

U.S. Ct. Int'l Trade Rule 8(f) ............................................................................35

U.S. Ct. Int'l Trade Rule 54(b) ...........................................................................1

**<u>Miscellaneous</u>**

Customs Modernization and Informed Compliance Act: Hearing on H.R. 3935
before the House Comm. on Ways and Means, Subcomm. on Trade, 102d
Cong. 91, 97 (1992) (statement of Comm'r Carol Hallett, U.S. Customs
Service) ...................................................................................................22

**STATEMENT AS TO RELATED CASES PURSUANT TO RULE 47.5**

The Defendant/Appellant's ("the Government's") Statement as to Related Cases is correct, except that (1) the Plaintiff/Appellee, International Custom Products, Inc. ("ICP") disagrees with the Government's arguments as to lack of jurisdiction with respect to <u>Int'l Custom Prods., Inc. v. United States</u>, United States Court of International Trade No. 08-00189, and (2) <u>Int'l Custom Prods., Inc. v. United States</u>, United States Court of International Trade No. 08-00055 could also be affected by this Court's decision.

## STATEMENT AS TO JURISDICTION PURSUANT TO RULE 28(a)(4)

The Government's Jurisdictional Statement is correct, except that the final judgment at issue here did not "dispose of all parties' claims." Instead, pursuant to U.S. Ct. Int'l Trade Rule 54(b), the trial court certified final judgment as to fewer than all of the claims, because the trial court determined that there was no just reason for delay.

## STATEMENT OF THE ISSUES

ICP disagrees with (1) the Government's characterization of the Notice of Action at issue ("the Notice of Action") as a mere "courtesy" and a "warning of an advance in duty rate at an upcoming liquidation of a specific entry" and (2) the Government's suggestion, by its description of the single issue presented for appeal, that the trial court accepted or endorsed such characterizations of the Notice of Action in any of its determinations.

## STATEMENT OF THE CASE

The nature of the case is that the now penniless ICP seeks to uphold the decision of the trial court condemning the outrageous and illegal actions of Customs and the false allegations of fraud that drove ICP out of business and caused its $65 million-dollar food product plant to be surrendered to its bank and shut down. The Government's Statement of the Case inadequately and incorrectly describes the nature of the case, the course of proceedings, and the disposition

below.  The trial court never characterized the Notice of Action as a "courtesy Notice of Action," and the trial court did not hold "that Customs violated 19 U.S.C. § 1625(c)(1) by issuing a courtesy Notice of Action without conducting public notice and comment," as the Government's Statement of the Case asserts.

Rather, the trial court's findings (at A51) were as follows:  (1) the Ruling was <u>not</u> obtained by material misrepresentation; (2) the Ruling at issue ("the Ruling," NYRL D86228, found at A1350-1351) was valid and binding on Customs at the time of the Entry at issue in this matter ("the Entry," Entry No 180-05900297); (3) the Entry conformed with the Ruling; (4) U.S. Customs and Border Protection ("Customs") improperly liquidated the Entry contrary to the Ruling Letter by means of the Notice of Action at issue ("the Notice of Action," dated April 18, 2005, found at A1366-1367); (5) the Notice of Action had the effect of unlawfully revoking the Ruling contrary to the requirements imposed by 19 U.S.C. § 1625(c); and, therefore, (6) ICP is entitled to reliquidation of the Entry in accordance with the tariff classification set forth in the Ruling.  The trial court's judgment (at A53) did not reference the Notice of Action, and simply decreed that Customs acted contrary to the requirements of 19 U.S.C. § 1625(c) in refusing to apply the Ruling to the merchandise in the Entry and ordered Customs (1) to reliquidate the Entry at the rate established by 2103.90,9091, HTSUS, as specified in the Ruling, and (2) to refund to ICP any overpayment, with interest.

The Government's Statement of the Case omitted reference to one of the published decisions of the trial court in the proceedings in this case:  Int'l Custom Prods., Inc. v. United States, 549 F.Supp.2d 1384 (Ct. Int'l Trade 2008).

## STATEMENT OF THE FACTS

The Government's Statement of Facts contains many unsupported (lacking references to the record), inaccurate, and misleading statements of fact and legal arguments.

**A.    History as to obtaining the Ruling and importing white sauce.**

ICP is a family-owned business, based in DuBois, Pennsylvania, that imported and distributed food ingredients to manufacturers of food products, including and primarily dairy ingredients, such as the product at issue in this case, called "white sauce."  A941, ¶¶ 1-3.  In 1998, prior to importing its first shipment of white sauce, ICP sought a binding tariff classification ruling from Customs. A941, ¶6.  The Ruling request (found at A1335-1349) stated that white sauce "may be used as the base for a gourmet sauce or salad dressing."  A1335.  The Ruling request also stated that white sauce "is the commercially recognized formulated sauce preparation which serves as the base for production of gourmet sauces and dressings."  Id.

The Ruling request included a specification sheet for white sauce which stated its "recommended" use, "[t]ypical usage is as a base sauce preparation for

gourmet sauces and dressings." A1337. That specification sheet stated that

"[w]hite sauce has been properly acidified and contains all of the necessary

thickeners and emulsifiers needed for the further production of gourmet sauces and

dressings." Id. That specification sheet further stated that "[t]he producer of the

gourmet sauces and dressings need only add the proper flavoring compounds

necessary for the production of their specific sauce or dressing." Id. Under

"TYPICAL ANALYSIS" for white sauce, that specification sheet indicated milkfat

range of 72-77%. Id. The Ruling request did not state or imply that ICP's white

sauce would never contain milkfat in excess of 77%, but rather only identified the

typical range of milkfat. Id. The specification sheet included in the Ruling request

listed the ingredients of white sauce as "Milkfat, Water, Vinegar (and/or lactic acid

and/or citric acid), Zanthum gum, Carboxymethelcellulose ("CMC"), Sodium

Phosphate and/or Sodium Citrate." Id. ICP submitted a sample of the white sauce

with its Ruling request. A942, ¶ 15.

On January 20, 1999, Customs issued advance ruling NYRL D86228 ("the

Ruling"), which classified the product described in ICP's ruling request in

Harmonized Tariff Schedule of the United States ("HTSUS") tariff subheading

2103.90.90. A1350-1351. HTSUS (1999) tariff subheading 2103.90.90 provided

for "[s]auces & preparations therefor; . . . : [o]ther: [o]ther: [o]ther: [o]ther" at a

duty rate of 6.6% ad valorem. A942, ¶ 17. HTSUS (2005) tariff subheading

4

2103.90.90 provides for "[s]auces and preparations therefor; . . . : [o]ther: [o]ther: [o]ther: [o]ther" at a duty rate of 6.4% ad valorem.  A943, ¶ 18.  The Ruling stated that the product contains, among other ingredients, milkfat, CMC, and xanthan gum, but does not actually state an amount or percentage or a range of amounts or percentages for milkfat, CMC, or xanthan gum content.  A1350-1351.

ICP imported "white sauce" from 1999 through late April 2005.  A943, ¶19.  At least some goods imported by ICP, entered from 1999 through late April 2005, were classified under HTSUS 2103.90.90.  A943, ¶ 20.

**B.    The Notice of Action.**

On April 18, 2005, Customs issued the Notice of Action reclassifying all unliquidated entries and all future shipments of ICP's white sauce under HTSUS tariff subheading 0405.20.30.  A1366-1367.  The Notice of Action itself stated that the reclassification had already taken place ("THE FOLLOWING ACTION WHICH WILL RESULT IN INCREASED DUTIES . . . HAS BEEN TAKEN"), that the white sauce was "properly classified under HTS 0405.20.30 @ $1.996/kg" (contrary to the Ruling), and that "[a]ll shipments of this product must be [so] classified."  A1366.

The Notice of Action did not merely provide courtesy notice of upcoming liquidations, as the Government attempts to characterize it at Brief for Appellant, p. 4, n. 2.  The Notice of Action directed that "all shipments of this product" (past

5

and future) must be classified under a different heading than the heading dictated by the Ruling. A1366. The consequence of the reclassification was an increase of approximately 2,400% in the duties owed by ICP on all of its unliquidated entries of white sauce. A3. Customs estimated that Rate Advancing the entries affected by the Notice of Action would result in bills being issued for $129,937,676. A1201-1202.

The Government states that "the port sent the Notice of Action under 19 C.F.R. § 152.2" (Brief for Appellant, p. 4), but references only the Notice of Action itself as the record support for this statement, and nothing on the face of the Notice of Action indicates that it came from "the port" or that it was issued "under 19 C.F.R. § 152.2." The trial court found that "Customs" issued the Notice of Action, not merely "the port," and the Government did not appeal that finding. A2. It is clear that the decision to issue the Notice of Action was not simply made by "the port" but rather was made and/or approved by: Acting Executive Director, Trade Compliance and Facilitation, Office of Field Operations, Laurence J. Rosenzweig; Assistant Director of Trade, Baltimore Field Office, Mike Walsh; Assistant District Director Robert Drobish; and others. A212-229; A1035-1037; A1155-1157; A1201-1202; A1221-1222; A1232-1234.[1] The Notice of Action

---

[1] This was not mere approval by "headquarters for the port" or "the port's headquarters," which the Government attempts to equate with "the port." See Brief for Appellant, p. 33. The Acting Executive Director's duties and

6

applied to "all shipments of this product," without reference to any particular port of entry, which indicates on its face that the Notice of Action was not merely the decision of one port.  A1366.

The Government contends in its Statement of Facts that "the undisputed evidence establishes that Customs followed all proper procedures."  Brief for Appellant, p. 5.  On the contrary, as the trial court found, Customs did not follow the Section 1625(c) notice-and-comment procedures prior to effectively revoking the Ruling via the Notice of Action, and Customs revoked the Ruling retroactively, rather than only prospectively.  A1035-1315 (collectively, "the Administrative Record"); A48-49.  Customs did not publish a notice in the Customs Bulletin alerting ICP (or the public) that it intended to abandon its prior treatment of white sauce or to revoke the Ruling, did not afford ICP (or the public) any opportunity for comment, and did not afford ICP a 60-day period prior to prospective imposition of the new duty rate to adjust its importations.  Id.

Including the Entry at issue, the Notice of Action affected 100 entries:  86 entries that were specified in the Notice itself, dating back to October 2003; 3 entries that were entered in April 2005, but not included in the Notice; and 11 entries that were released from a bonded warehouse pursuant to the temporary restraining order granted by the trial court in Int'l Custom Prods., Inc. v. United

responsibilities include setting policy for all areas of trade and providing directions to all of the port directors, not just one port, in all areas of trade.  A212.

States, Court No. 05-00509 (Ct. Int'l Trade Sept. 15, 2005) ("ICP II").  A2-3; A88, ¶12; A344, ¶12.  The Notice of Action, on its face, was not limited to the entries listed in the Notice of Action but rather stated that "This classification will be applied to all unliquidated entries, including:  [the listed entries]."  A1366.

## C.    The Entry at issue.

Because ICP could not afford to pay the 2,400% increase in duties on the scores of entries affected by the Notice of Action, ICP protested and paid duties on only one of the affected entries.  The Entry at issue consisted of 1,120 cases of white sauce manufactured on January 29 and 30, 2005, and was entered on April 29, 2005.  A26; A1747; A1751-1754.  ICP sold the white sauce comprising the Entry to its largest customer, Schreiber Foods, Inc.  A943, ¶22.

The Entry (Entry No. 180-05900297) was liquidated on June 29, 2007 under HTSUS 0405.20.30.  A943, ¶23.  On July 26, 2007 ICP timely protested the liquidation of the Entry, with a request for accelerated disposition, which was deemed denied 30 days after it was submitted by certified mail, pursuant to 19 U.S.C. § 1515(b) (2000).  A943, ¶24.  ICP paid all the duties that Customs assessed on the Entry by August 27, 2007, which duties totaled $66,602.32.  A943, ¶25.

**D.    Conformity of the Entry at issue with the Ruling.**

The Government, in its Statement of Facts, contends that "the actual imported dairy spread and the goods described by the ruling were materially different."  Brief for Appellant, p. 4.[2]  On the contrary, the trial court found "the white sauce in the Entry materially conformed to the Ruling Letter," and the Government did not appeal that finding, or any of the trial court's factual findings.  A51.

The actual milkfat content of the Entry was approximately 76.65%.  A27.  Customs's own tests determining the percentage of milkfat and moisture in ICP's white sauce "confirmed ingredients to be as stated by importer."  A1039, ¶4; A944, ¶34.  As to thickener content, CMC and xanthan gum were in ICP's white sauce generally, and in the Entry specifically, at a functional level sufficient to cause thickening for use as a base for sauces.  A22.

**E.    Accurate information provided in Ruling request.**

As to principal use, the Government did not appeal the relevant factual findings of the trial court, but, in its Statement of Facts, the Government continues to characterize ICP's descriptions of how white sauce was used in its Ruling request as mere "assertions."  Brief for Appellant, p. 3.  Likewise, the Government

---

[2]At page 5 of the Brief for Appellant, the Government likewise asserts that "Since ICP's dairy spread materially differed from that described in NYRL D86228, the ruling was valid, but inapplicable to the instant importations."

continues to assert that "ICP was importing merchandise materially different from that described in ICP's ruling, particularly, and critically, in its use" and "ICP's dairy spread materially differed from that described in NYRL D86228 [the Ruling]." Brief for Appellant, pp. 4-5. The trial court found to the contrary, confirming that ICP "accurately described the use of white sauce when it submitted the Ruling Request to Customs" and "the white sauce in the Entry materially conformed to the Ruling Letter." A31 and A51. The Government did not appeal those findings.

Just as it is described in ICP's Ruling request, white sauce is the commercially recognized, formulated sauce preparation, which serves as a base for production of gourmet sauces and dressings. A1337; A37. White sauce has been properly acidified and contains all of the necessary thickeners and emulsifiers needed for further production of gourmet sauces and dressings. A1337; A22; A41. At the time the 1999 Ruling was requested and issued, the typical use of white sauce in the United States (and ICP's intended use) was as a base for the further production of sauces and dressings. A31; A39. ICP's Ruling request neither stated nor suggested that use of white sauce as a base for the further production of sauces and dressings was the only actual or potential use for white sauce. A1335-1349.

Customs never identified or investigated the principal use of the class and kind of goods to which ICP's white sauce belonged and the Government presented

10

no evidence at trial as to the use of any white sauce other than the white sauce that ICP imported. A1035-A1315 (collectively, "the Administrative Record"); A36. The investigation that led to the Notice of Action was limited solely to investigation of what ICP's customers did with the white sauce that ICP imported and sold. A1035-A1315.

As to ICP's intended use of white sauce, when it submitted the Ruling request, ICP planned to construct a production facility to use the imported white sauce itself, and make it into various different milkfat based sauces, such as an Awesome Aussie Grilling Sauce and an Awesome Aussie Seafood Sauce. A39. ICP expected to make three to four times as much profit using white sauce to make and then sell sauces than it made simply reselling the white sauce. A39. Unfortunately, construction took years, as ICP struggled through logistical difficulties to build, at great expense, a large production facility to produce gourmet sauces and dressings. A39.

Throughout Appellant's Brief, the Government references "white sauce" only in quotes, and attempts to suggest and assert that the product at issue was merely invoiced as "white sauce" by ICP and called "white sauce" by ICP, but that it was actually not white sauce. Brief for Appellant, p. 3. On the contrary, white sauce was not ICP's own creative name or misnomer for the imported product at

11

issue, but rather, "white sauce" is the correct commercial, common, technical

designation for the product at issue.  A37.

## F.    The deliberative process leading to the Notice of Action and effective retroactive revocation of the Ruling.

The Government asserts that Customs "learned that the goods actually being

imported by ICP was not white sauce, but essentially a form of butter, properly

classified as 'dairy spread' . . . ."  Brief for Appellant, p. 3.  It is misleading at best

to now state that Customs "learned" such asserted facts.  ICP so clearly

demonstrated those asserted "facts" to be untrue at trial that the Government has

chosen not to appeal any of the factual findings of the trial court.

In the recitation of facts in Int'l Custom Prods., Inc. v. United States, 374

F.Supp.2d 1311, 1333 (Ct. Int'l Trade 2005) ("ICP I"), rev'd, vacated, 467 F.3d

1324 (Fed. Cir. 2006), the trial court provided an excellent summary of the

deliberative process leading up to the Notice of Action (as it is reflected in the

Administrative Record; A1035-A1315).  The trial court pulled that summary into

Int'l Custom Prods., Inc. v. United States, 549 F.Supp.2d 1384, 1391-1392 (Ct.

Int'l Trade, 2008) and then incorporated its earlier determination in Int'l Custom

Prods., Inc. v. United States, 549 F.Supp.2d 1384 (Ct. Int'l Trade, 2008) into the

opinion supporting the judgment at issue in this appeal.  A48.  That excellent

summary follows:

In August 2004, Customs personnel discussed ICP's ruling in several internal communications. In one such communication, the writer stated that the Customs National Import Specialist ("NIS") supported her position that "because of the binding ruling, we cannot just RA [rate advance] the recent entries." The same communication continued and stated that before a rate advance Customs must have the binding ruling revoked by Customs Headquarters. In December 2004, the Chief of the Special Products Branch of Customs National Commodity Specialist Division stated in a letter to the Director of the Commercial Rulings Division at Customs Office of Regulations and Rulings ("OR & R") that "we believe the ruling [NY D86228] is flawed and should be revoked." ... The Court further notes that in December 2004 one Customs official stated that Customs "did not have time to go through the 625 [section 1625(e) notice and comment] procedures" and that Customs knew "from the discussions we have had in branch meetings that our superiors have been all over the place on 625 issues and the courts have been no help in resolving the problems but have simply added to them."

By March 2005, Customs had seemingly abandoned the idea of modifying or revoking ICP's ruling on white sauce. On March 10, 2005, Customs Chief of the Special Products Branch of the National Commodity Specialist Division issued a memorandum to Customs Associate Chief Counsel "on the product for which a tariff classification has been requested." The writer stated that because ICP's ruling "was based on an erroneous assertion of facts as to the use of the product, the classification of the product under a principal use provision, which relied on those erroneous facts, is also erroneous, and may not be relied upon by the importer." ... [A]nother Customs official was unconvinced and stated that based on his experience, "unless we can demonstrate that the company committed fraud when requesting the ruling, OR&R is going to have to revoke the ruling, issue and public notice, and give the company time to adjust [its] import practices based on the changed classification. In other words, I doubt that they will be supportive of a rate advance, when the importer can claim [it was] relying on a ruling issued by Customs." ICP I, 374 F.Supp.2d at 1328-29 (internal citation omitted).

We know which side of the debate prevailed. Customs did not follow the section 1625(c) notice-and-comment procedures. Instead, Customs issued the April 2005 Notice of Action informing ICP that it would liquidate ICP's white sauce entries under HTSUS subheading

0405.20.3000. Customs engaged in a months-long deliberative
process, and the result of that deliberative process was the April 2005
Notice of Action.

Int'l Custom Prods., Inc. v. United States, 549 F.Supp.2d at 1391-1392 and n. 7.

Also included in that deliberative process were (1) an e-mail noting the Office of

Regulations and Rulings' ("OR&R's") concern that "revoking the ruling would

afford ICP 60 days to continue to import under the ruling" (A1074) and (2) another

email where the Assistant Director Walsh stated: "I am trying to persuade HQ that

we do not need to get a revocation of the original ruling for ICP before we go

forward with the rate advances" (A1225).

The Government characterizes the deliberative process differently than the

trial court described it, and asserts that Customs simply discovered that ICP's

white sauce was materially different from the goods described in the Ruling and,

therefore, as a courtesy, notified ICP that the Ruling did not cover ICP's

merchandise.  Brief for Appellant, p. 4.  The Government maintains that the Ruling

was "valid, but inapplicable to the instant importations" because the Ruling was

"correct for the set of circumstances described," but "ICP's dairy spread materially

differed from that described in NYRL D86228 [the Ruling]."  Brief for Appellant,

p. 5.

On the contrary, in the deliberative process leading to the Notice of Action,

Customs confirmed the absence of any nonconformity in the ingredients in ICP's

14

white sauce.  A1039, ¶4.  The only difference Customs asserted between ICP's

white sauce and the merchandise described in the Ruling, as the Government

admits, was "in its use" by ICP's customers.  See Brief for Appellant, p. 4.

The Government could not defend Customs's actions based upon the actual

reasoning Customs used in issuing the Notice of Action, because "even if a

particular import is proven to be actually used inconsistently with its principal use,

the import is nevertheless classified according to its principal use."  See Clarendon

Mktg., Inc. v. United States, 144 F.3d 1464, 1467 (Fed. Cir. 1998).  As noted

above, Customs had never even identified or investigated the principal use of the

class and kind of goods to which ICP's white sauce belonged.  Therefore, the

Government instead sought, and utterly failed, (1) to invalidate the Ruling on the

grounds of asserted misrepresentations made in obtaining the Ruling and/or (2) to

prove a nonconformity between the ingredients in the white sauce in the Entry and

the white sauce described in the Ruling.

## G.    Subsequent prospective revocation of the Ruling.

The Government improperly includes in its Statement of Facts a recitation of

events relating to its eventual formal, prospective revocation of the Ruling, which

the Government contends it did "in full compliance with 19 U.S.C. § 1625(c)(1)"

subsequent to the Notice of Action.  Brief for Appellant at p. 7.  These irrelevant

asserted facts are presented without reference to the record in this case and without

15

any suggestion of a basis for judicial notice. This Court should disregard all such attempts at putting asserted facts before this Court that were not made a part of the record in the trial court in this case, of which this is only one example.

## H.    ICP's Complaint.

The Government's Statement of Facts mischaracterizes the claims set forth in ICP's Complaint. Count I of ICP's Complaint did not claim that "Customs violated 19 U.S.C. § 1625(c)(1) by not publishing the Notice of Action for public notice and comment." See Brief for Appellant, p. 8. Rather, as the trial court more accurately characterized it, Count I alleged that the Notice of Action "was unlawful because it effectively revoked the Ruling Letter without going through the notice-and-comment revocation procedures required by 19 U.S.C. § 1625(c)(1), and applied that revocation retroactively." A7-8; A92-94. The trial court did not direct the entry of final judgment as to the other Counts in ICP's Complaint, so, although the Government also mischaracterized ICP's other Counts, it is not necessary to address ICP's other Counts at this time.

The Government asserts, (in **bold font**, no less), without reference to the record, that ICP consistently responded to the Government's contention that ICP had incorrectly pled its cause of action by stating that ICP "intentionally did not wish to allege a violation of [19 C.F.R.] section 177.9; but instead only desired to proceed on its cause of action that Customs violated 19 U.S.C. § 1625(c) by

16

issuing a Notice of Action." Brief for Appellant, p. 9. Once again, this Court

should disregard all such attempts at putting asserted facts before this Court that

were not made a part of the record in the trial court in this case.

Moreover, the Government's argument mischaracterizes ICP's Complaint

once again. ICP's Count I cause of action is not "that Customs violated 19 U.S.C.

§ 1625(c) by issuing a Notice of Action," but rather was more accurately

characterized by the trial court as quoted above. In addition, violation of 19 C.F.R.

§ 177.9 (which the Government does not deny clearly also occurred here), is within

the scope of ICP's Complaint generally, and within the scope of Count I of ICP's

Complaint specifically.

ICP's Complaint makes no specific reference to 19 C.F.R. § 177.9, but

paragraph 1 notes that ICP was seeking "an order directing Customs to reliquidate

ICP's product in accordance with ICP's advance ruling." A83-84. Paragraph 3 of

ICP's Complaint complains that Customs "summarily reclassified ICP's white

sauce in April 2005, under a tariff heading other than the one specified in ICP's

ruling." A84. Paragraph 9 of ICP's Complaint similarly complains about

"Custom's unlawful reclassification of ICP's white sauce in April 2005, as

announced in the Notice of Action . . . ." A87. Paragraph 19 makes clear ICP is

challenging "the tariff Customs is imposing on the imported white sauce." A90.

Paragraph 27 incorporated all of the prior paragraphs into Count I and Paragraph

28 (in Count I) complains as to Customs "reclassifying ICP's imported white sauce under a tariff heading other than the one mandated by ICP's advance classification ruling." A92. ICP's Complaint, and Count I specifically, complained both of (1) the failure to properly liquidate the Entry by applying the Ruling to the Entry (in other words, a violation of 19 C.F.R. § 177.9) and (2) the improper effective revocation of the Ruling (in violation of 19 U.S.C. § 1625(c)(1)).

In one of the legal arguments in the Government's Statement of Facts, the Government contends that

> governing statutes and long settled case law provide that importers wishing to claim that Customs improperly issued a Notice of Action and/or subsequently liquidated its entry contrary to a ruling, may challenge the liquidation by protesting it, obtaining jurisdiction under 28 U.S.C. § 1581(a), and pleading the cause of action that the classification rate of duty set forth in the liquidation is incorrect because Customs failed to follow a binding ruling, in violation of 19 C.F.R. § 177.9.

Brief for Appellant, p. 9. Although the Complaint states that the Notice of Action improperly but effectively revoked the Ruling, ICP clearly also (1) challenged the liquidation of the Entry by protesting it, (2) obtained jurisdiction under 28 U.S.C. § 1581(a), and (3) stated that the classification rate of duty set forth in the liquidation was incorrect. A943, ¶24; A83-92.

## SUMMARY OF ARGUMENT

The trial court correctly held that the Notice of Action in effect revoked the Ruling, contrary to law.  The Notice of Action was an "interpretive ruling or decision" within the meaning of 19 U.S.C. § 1625(c).  The Notice of Action did not simply reflect one port director's preliminary "belief" as to the duty of one entry of ICP's white sauce.  It reclassified all of ICP's white sauce, retroactively and prospectively.  The purpose of Section 1625, to provide security, stability, and transparency, would be thwarted if a notice of action could never constitute such an "interpretive ruling or decision."  The Government's arguments to the contrary are circular and elevate form over substance.

Customs can easily avoid any burden or expense from notices of action coming under Section 1625(c) scrutiny by limiting its use of notices of action to the proper purposes of such notices, and not using notices of action to countermand and effectively revoke rulings.  Given that there is no recourse under 28 U.S.C. § 1581(i) (per this Court's holding in ICP I), the Government's arguments as to the limited scope of a 28 U.S.C. § 1581(a) cause of action would frustrate the statutory scheme by denying importers any means of challenging an improper revocation of a ruling.  Because the Government's arguments are without merit, this Court should affirm the judgment of the trial court in its entirety.

19

## ARGUMENT

**I.    The trial court correctly held that the Notice of Action in effect revoked the Ruling, contrary to law.**

The trial court correctly held that the Notice of Action in effect revoked the Ruling, contrary to law.[3]  Section 1625(c)(1) provides that before Customs may issue an "interpretive ruling or decision" that would modify or revoke a prior interpretive ruling or decision, Customs must publish notice of its intent to do so, and give interested parties an opportunity to comment.  Section 1625(c)(1) also provides that any modification or revocation shall not become effective until 60 days after the final interpretive ruling or decision is published.

**A.    The Notice of Action was an "interpretive ruling or decision."**

The Notice of Action was an "interpretive ruling or decision" as those terms are used in Section 1625(c).  When faced with a question of statutory interpretation, the first task of a court is to identify "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." <u>Chevron U.S.A. Inc. v. Natural</u>

---

[3] Much of this section of the argument is either quoted or paraphrased from the trial court's opinion denying the Government's Motion to Dismiss Count I of ICP's Complaint, which was published at <u>Int'l Custom Prods., Inc. v. United States</u>, 549 F.Supp.2d 1384 (Ct. Int'l Trade, 2008).  As noted above, the trial court incorporated that earlier determination into the opinion supporting the judgment at issue in this appeal.  A48.

Res. Def. Council, Inc., 467 U.S. 837, 843-14 (1984).  To determine whether Congress has directly spoken as to the meaning of a statutory term, a court "must utilize the 'traditional tools of statutory construction,'" beginning with an inquiry into the ordinary meaning of the text itself.  Cal. Indus. Prods., Inc. v. United States, 436 F.3d 1341, 1353 (Fed.Cir. 2006) (quoting Timex V.I., Inc. v. United States, 157 F.3d 879, 882 (Fed.Cir. 1998)).  Here, the ordinary meaning of the term "interpretive ruling or decision" could encompass a wide swath of determinations, and the statute does not define the term.

Yet, even if a statute's text does not explicitly address the precise question, "the intent of Congress may be [nonetheless] clear." Id.  The meaning of an undefined or otherwise ambiguous statutory term "may be discerned by looking to the provisions of the whole law, and to its object and policy." Id. (internal brackets and quotation marks omitted).  Where multiple meanings are plausible, a court must adopt the interpretation that furthers the statutory purpose, rather than undermines it.  Shapiro v. United States, 335 U.S. 1, 31 (1948) ("[W]e must heed the equally well settled doctrine of this Court to read a statute, assuming that it is susceptible of either of two opposed interpretations, in the manner which effectuates rather than frustrates the major purpose of the legislative draftsmen.").

**1.    The purpose of Section 1625 is to provide security, stability, and transparency.**

The purpose of Section 1625 is to provide importers with security and

stability regarding Customs's policies and practices, and to provide transparency

when Customs decides to change those policies and practices.  The provision of

Section 1625 relating to modification and revocation, Section 1625(c), was added

by the Customs Modernization Act (the "Mod Act"), Pub.L. 103-182 (codified

primarily in scattered sections of 19 U.S.C.).  The then-Commissioner of Customs

testified before Congress that changes to the law were needed because "[i]mporters

have the right to be informed about Customs rules and regulations, and its

interpretive rulings and directives, and to expect certainty that the ground rules will

not be unilaterally changed by Customs without the proper notice and opportunity

to respond."  Customs Modernization and Informed Compliance Act: Hearing on

H.R. 3935 before the House Comm. on Ways and Means, Subcomm. on Trade,

102d Cong. 91, 97 (1992) (statement of Comm'r Carol Hallett, U.S. Customs

Service) (quoted in Precision Specialty Metals, Inc. v. United States, 182

F.Supp.2d 1314, 1328 (Ct. Int'l Trade 2001)).

In particular, "Section 1625(c)'s notice and comment requirements are

intended to ensure that the interested public has notice of a proposed change in

Customs's policy and to allow the public to make comments on the appropriateness

of the change and to modify any current practices that were based in reliance on

22

Customs's earlier policy." Sea-Land Serv., Inc. v. United States, 239 F.3d 1366,

1373 (Fed.Cir. 2001); accord Calif. Indus. Prods., Inc. v. United States, 350

F.Supp.2d 1135, 1146 (Ct. Int'l Trade 2004) ("[T]here is no dispute that the

purpose of 19 U.S.C. § 1625 is to provide predictability for importers in structuring

their business while also retaining flexibility for Customs in the exercise of its

administrative authority.") (internal quotation and citation omitted), aff'd, 436 F.3d

1341 (Fed.Cir. 2006).

### 2.    To hold a notice of action could never constitute an "interpretive ruling or decision" would thwart the purpose of Section 1625.

To hold that a notice of action could never constitute an "interpretive ruling

or decision" that triggers application of Section 1625(c), as the Government urges,

would be inconsistent with the purpose of the statute.  The protections of Section

1625(c) would be contingent on the instrument by which Customs informs an

importer of a modification or revocation.  This would elevate form over function.

Further, that interpretation would allow Customs to manipulate when Section

1625(c) would apply by strategically choosing how to inform an importer of a

modification or revocation.  Finally, as a practical matter, Customs regularly

communicates its decisions using notices of action.  See, e.g., Precision Specialty

Metals, 182 F.Supp.2d at 1318 (using Notice of Action to notify importer of denial

of drawback).  Excluding notices of action from the purview of Section 1625(c)

would create an exception large enough to swallow the rule.

Customs's months-long deliberative process culminating in the Notice of Action, as summarized in the Statement of Facts above, demonstrates how untenable it would be to categorically exclude notices of action from judicial review under Section 1625. That Customs decided to inform ICP of the determination in a notice of action, rather than some other instrument, does not change its nature. The Notice of Action was a decision contemplated at length, and it represented the agency's formal position regarding the applicability and validity of the Ruling. For the Government to argue here that it was something less than that is disingenuous.

Reading Section 1625(c) in the limited manner the Government proposes would undermine the purpose of the statute. See Shapiro v. United States, 335 U.S. 1, 31 (1948) ("[W]e must heed the equally well-settled doctrine of this Court to read a statute, assuming that it is susceptible of either of two opposed interpretations, in the manner which effectuates rather than frustrates the major purpose of the legislative draftsmen."). This Court should not adopt a construction of § 1625 that, contrary to Congressional intent, treats the statutory procedures as avoidable at the whim of Customs and thus renders them meaningless.

Indeed, such a construction would enable Customs to do precisely what it did here: prepare a secret memorandum justifying the retroactive reclassification of a product covered by an advance ruling and then announce the decision by a notice

of action without providing advance notice, an opportunity to comment, or a 60-day grace period.  By adopting a narrow construction of the term "decision," the Court would restore to Customs its pre-Mod Act discretion not to provide notice and comment before revoking a ruling--the very discretion that Congress deliberately curbed by enacting Section 1625(c).  The Government urges the Court to adopt a narrow definition of "decision" that would eviscerate the protections of Section 1625(c) and allow the Government to circumvent them.  Accordingly, the Notice of Action is an "interpretive ruling or decision" within the meaning of Section 1625 and Customs effectively revoked the Ruling by its conduct in connection with the white sauce importations.

**B.    The Government's various arguments against finding that the Notice of Action was an "interpretive ruling or decision" are unavailing.**

   **1.    The similar language of Section 1625(a) does not limit the scope of Section 1625(c).**

The Government tries to use the similar language of Section 1625(a), read in *pari materia* with Section 1625(c), to suggest a very narrow scope for "interpretive ruling or decision."  However, the language of 1625(a) merely shows <u>some</u> of the types of interpretive rulings and decisions that are <u>included</u> within the meaning of "interpretive ruling or decision," not an exhaustive list of all of the types of interpretive rulings or decisions included within that phrase:

   Within 90 days after the date of issuance of any interpretive ruling
   (including any ruling letter, or internal advice memorandum) or

protest review decision under this chapter with respect to any customs transaction, the Secretary shall have such ruling or decision published in the Customs Bulletin or shall otherwise make such ruling or decision available for public inspection.

The Government's argument inexplicably reads the word "including" in 1625(a) as if the word meant "is limited to the following only." The word "including" does not suggest an exhaustive list.

Similarly, the Government points to the decision of this Court in <u>Cal. Indus. Products, Inc.</u>, as support for the argument that a Notice of Action is not an "interpretive ruling or decision." In that case, this Court reasoned that Section 1625(c) should be construed consistently with section 1625(a). 436 F.3d at 1351. Because Section 1625(a) refers to a "protest review decision," this Court concluded that "the term 'decision' in the phrase 'ruling or decision' in 19 U.S.C. § 1625(c), <u>includes</u> a 'protest review decision.'" <u>Id.</u> (underlining added). However, this Court did not hold that the term "decision" was <u>limited to</u> a protest review decision, which is the argument that the Government makes here.

### 2. The legislative history does not support the Government's narrow construction of "interpretive ruling or decision."

The Government attempts to rely on legislative history to support its narrow construction of the term "decision." The Government quotes extensively from legislative history materials that discuss, among other things, the congressional intent to provide "transparency for the public as a whole." Brief for Appellant at p.

26

25.  Remarkably, the Government then concludes that "[e]ven though Congress used the words 'interpretive ruling or decision' in 19 U.S.C. § 1625(c), it is clear from the legislative history that Congress intended this phrase to be synonymous with 'Customs rulings and policy directives,' and the phrases should be read accordingly."  Id. at 26.  The short answer to this is that a "court must presume that a legislature says in a statute what it means and means in a statute what it says there."  Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992) (internal citation omitted).

### 3.     A proper notice of action should not and usually would not come within the purview of Section 1625(c), but this one did.

A proper notice of action should not and usually would not come within the purview of Section 1625(c), but the improper Notice of Action in this case did. The Government argues, in circular fashion, that the Notice of Action did not "effectively revoke" the Ruling because a notice of action used to revoke a ruling would exceed the limits of what is permitted by 19 C.F.R. §152.2, and because 19 C.F.R. § 177.12 does not provide that "an entry specific document such as a Notice of Action could revoke a ruling."  See Brief for Appellant, pp. 26, 31.  These arguments confuse the issue.  It is true that, as a legal matter, an importer's classification ruling remains binding until Customs complies with the statutory and regulatory requirements found in 19 U.S.C. § 1625(c)(1) and 19 C.F.R. § 177.12, and notices of action are not supposed to be used to revoke rulings.  Yet, as a

27

practical matter, Customs may effectively revoke a classification ruling by its conduct, or via a notice sent on any form it chooses, without complying with the applicable statutes and regulations.

For example, Customs could tell an importer that the agency revoked the importer's classification ruling and that the importer can no longer rely on the ruling when importing merchandise.  This would effectively be a revocation of the classification ruling, even if Customs failed to comply with the requirements of Section 1625.  Alternatively, Customs could effectively revoke a ruling by consistently liquidating merchandise in a manner inconsistent with a classification ruling, failing to reliquidate the merchandise when the classification ruling is brought to its attention, and informing the importer, via a Notice of Action (Customs Form 29), or via any other form, that it would continue to classify any future imports similarly.

The latter is precisely what happened here, with devastating impacts to ICP of exactly the type Section 1625(c) was designed to prevent.  The Ruling stated that the white sauce would be classified under HTSUS subheading 2103.90.9060. Customs informed ICP in the Notice of Action that Customs would liquidate all entries of the product (past and future) under HTSUS subheading 0405.20.3000. Then Customs failed to respond when ICP protested the liquidations on the ground that they were not consistent with the Ruling.  Customs's failure to comply with

Section 1625(c) does not insulate its conduct from judicial scrutiny; rather, that failure makes Customs's conduct actionable.

The Notice of Action in this case first stated that ICP's white sauce "will be properly classified under HTSUS 0405.20.3000" and then continued that "[a]ll shipments of this product must be classified as above." A1046 (underlining added). By reclassifying ICP's white sauce under HTSUS 0405, the Notice of Action effectively revoked the Ruling.  Customs proceeded in that fashion because it concluded that it did "not have the time to go through the [notice and comment] procedures" (A1311), and because compliance with Section 1625(c) "would afford ICP 60 days to continue to import under the ruling" and would "not allow [Customs] to [rate advance] open entries" (A1074).  Although ruling revocations may not have been among the intended uses of a Notice of Action when Customs promulgated 19 C.F.R. § 152.2, that was plainly the intended and effective purpose of the Notice of Action issued to ICP.

The Notice of Action did not simply reflect the port director's "belief" as to the duty of one entry of ICP's white sauce — it reclassified all of ICP's white sauce, going back to entries from 18 months earlier and extending to future shipments as well.  In other words, as the trial court in ICP I correctly found, the Notice of Action accomplished two tasks:  (1) it announced the immediate liquidation of certain entries of ICP's white sauce under HTSUS 0405, and (2) it

took the further step of revoking ICP's advance ruling.  See ICP I, 374 F. Supp. 2d

at 1333.  In short, the Notice of Action plainly was itself a decision, or an

announcement of a decision; in either event, the Government's arguments that no

decision was ever made are untenable.  That Customs normally does not have to

follow Section 1625(c) notice-and-comment procedures when using notices of

action for their intended purpose does not exempt Customs from compliance with

Section 1625(c) when, as here, it uses a notice of action to announce the retroactive

evisceration of an advance ruling.

> **4.    The Government's arguments regarding the potential practical impact of judicial scrutiny of notices of action under Section 1625(c) should not sway this Court.**

The Government's arguments regarding the potential practical impact of

judicial scrutiny of notices of action under Section 1625(c) should not sway this

Court.  Customs was not at all concerned by the devastating practical impact of its

actions in this case on ICP, but it asserts concern over the potential practical impact

of notices of action coming under judicial scrutiny under Section 1625(c).

Customs deliberately flouted Section 1625(c) here, but claims to be concerned

about "inadvertently" doing so in the future.  See Brief for Appellant, pp. 12, 28.

Such concerns are unwarranted.  It should not be difficult, as a practical

matter, to avoid what happened here in the future.  The next time Customs

perceives the need to revoke or modify a ruling, it could simply follow Section

1625(c) rather than trying to use a Notice of Action to avoid the need to comply with Section 1625(c).  If port directors stick to using Notice of Action for their stated purpose of notifying importers when a port director "believes that the entered rate or value of any merchandise is too low, or if he finds that the quantity imported exceeds the entered quantity" (19 C.F.R. § 152.2), and avoid countermanding a ruling by directing that "all shipments" of a product identical in all material respects to a product described in a binding ruling must nevertheless be classified contrary to the ruling, they will steer far clear of Section 1625(c) without any difficulty.

Where a port director believes there are actual material differences between the product entered and the product described in a ruling, there would be no need to worry about Section 1625(c) in issuing a notice of action stating same, and no need to follow its notice-and-comment procedures, because so stating would not countermand a ruling.  Here, Customs only ran into trouble under Section 1625(c) because, despite the fact that Customs found no material difference between the ingredients in ICP's white sauce and the white sauce described in the Ruling, Customs chose to countermand the ruling with a notice of action.  If this Court upholds the judgment at issue, then this type of problem should never repeat itself.

**5.    The merger concept does not help the Government's argument.**

The Government argues that all decisions leading to a liquidation are "subsumed" and merged in the liquidation and it is the liquidation only against which a protest will lie, in order to attempt to insulate the decisions leading up to a liquidation (specifically in this case, the Notice of Action) from judicial scrutiny. Brief for Appellant, pp. 29-30.  The Government argues that there is "one unified procedure for challenging all aspects of a liquidation" (id.), but simultaneously wants to limit which "aspects" of the liquidation process can be challenged.  In the Government's view, through appeal of the denial of a protest, an importer can only challenge the liquidation that it protested and cannot challenge any of the decisions that have been "subsumed" or merged into the liquidation.  On the contrary, by protesting a liquidation, an importer is protesting the entire process that merged into the liquidation, not just the final step.

The Government's reliance on 19 U.S.C. § 1514(a) in attempted support of these arguments, is misplaced.  Section 1514(a) explains what types of decisions become final if a timely protest is not filed, and is not addressed to which decisions are thereby challenged or come under scrutiny when a protest of a liquidation is filed.  The Government's use of caselaw discussing the concept of merger is also misplaced.  The Court of International Trade, in Dow Chemical Co. v. United States, 647 F.Supp. 1574, 1581 (1986), one of the cases cited by the Government,

explained that "[s]ince a liquidation decision is merged in and becomes a part of a liquidation, an importer protesting classification of merchandise thereby protests the liquidation."  The Government argues that an importer cannot attack a notice of action but rather must limit its protest to the liquidation.  On the contrary, by protesting the liquidation of the Entry, ICP was protesting the entire process that was merged into that liquidation, including the Notice of Action, to the extent the Notice of Action was merged into that liquidation.  To the extent the merger concept is relevant at all, instead of insulating the process from judicial scrutiny, the merger concept opens up the entire process to judicial scrutiny.

### 6.    The Government's arguments would foreclose any means of challenging improper revocation of rulings in violation of Section 1625(c).

The Government's arguments would foreclose any means of challenging improper revocation of rulings in violation of Section 1625(c).  In ICP I, the Government assured this Court that relief under 28 U.S.C. § 1581(a) was not manifestly inadequate, successfully foreclosing any challenge to the improper Notice of Action under 28 U.S.C. § 1581(i).  Now the Government insists that Section 1581(a) is just for challenging liquidations, with myopic focus on only the final step in the process, and that this Court should not and cannot scrutinize the Notice of Action under Section 1581(a) either.  The Government insists ICP should have limited its Complaint and the trial court should have limited its analysis,

holdings, and judgment to the sole issue of whether the Entry was liquidated under the proper heading or not.

If the Government is right about the limited scope of relief and review available in a case contesting the denial of a protest under § 1581(a), then the Government misled this Court in ICP I, because the relief available under § 1581(a) is manifestly inadequate and ICP should have been permitted to proceed under § 1581(i). The Government simply cannot have it both ways.

It is not clear how the Government would suggest an importer that receives a notice of revocation of a ruling in violation of Section 1625(c) should proceed. Even if, for example, the Customs Commissioner sent a letter on standard letterhead to the importer stating "Ruling XYZ is hereby retroactively revoked," in complete disregard of Section 1625(c), it does not appear the Government is willing to admit any path to relief for the violation of Section 1625(c). The only relief available in such a case, in the Government's view, is for reliquidation of any subsequent liquidations made in violation of 19 C.F.R. § 177.9, and in such a case, any such retroactive notice must simply be ignored, despite the upheaval of the importer's business thereby.

If such an importer cannot get a court to address such an improper retroactive notice under Section 1581(i), and even after paying the duty on and protesting the liquidation of an entry affected by such a retroactive notice, the

importer still cannot get a court to address the propriety of the retroactive notice under Section 1581(a), then the importer is clearly wronged under Section 1625(c), but has no remedy. This is especially troubling where, as here, the importer cannot afford to pay the duties to contest the denials of protests of the other affected entries, and the Government proceeds to liquidate many other entries in violation of the ruling, even while the importer is properly contesting the denial of its protest regarding one of the affected entries.

The Government's argument amounts to a contention that the waiver of sovereign immunity simply does not extend to challenges against retroactive notices sent in violation of Section 1625(c), so ICP is out of luck. If the Government's arguments are accepted, between ICP I and this case, the Government will have successfully slammed the courthouse door in ICP's face. Such a result is contrary to the clear purposes of the statutory scheme at issue.

## II.    The Government misapprehends the purpose of a complaint and seeks unwarranted relief.

The Government misapprehends the purpose of a complaint and seeks unwarranted relief. The Government seems to be under the impression that the trial court could only have properly ordered reliquidation of the Entry if ICP had specifically referenced 19 C.F.R. § 177.9 in its Complaint. U.S. Ct. Int'l Trade Rule 8(f) provides that "Pleadings must be construed so as to do justice." U.S. Ct. Int'l Trade Rule 8(a)(2), which is worded identically to Federal Rule of Civil

35

Procedure 8(a)(2), "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

As explained in Section H of the Statement of Facts above, even though ICP's Complaint did not specifically reference 19 C.F.R. § 177.9, violation of that regulation, in addition to violation of Section 1625(c), is within the scope of ICP's Complaint generally, and within the scope of Count I of ICP's Complaint specifically. ICP's Complaint alleged that (1) the Court has jurisdiction under Section 1581(a) (A87-90, ¶¶ 9-19); (2) as of April 2005, ICP had a binding ruling that required its imported white sauce to be classified under HTSUS 2103 (A88, ¶ 10); (3) ICP imported white sauce Entry No. 180-05900297 while the ruling was in effect (A89-90, ¶ 16); and (4) Customs liquidated the Entry under a different tariff heading, HTSUS 0405 (id.). The fact that ICP did not go further and allege "and therefore Customs violated 19 C.F.R. § 177.9," is of no consequence whatsoever. Nothing ICP ever did or said indicated what the Government repeatedly asserts with no record support: that ICP "intentionally did not wish to allege a violation of section 177.9; but instead desired only to proceed on its cause of action that

Customs violated 19 U.S.C. § 1625(c) by issuing a Notice of Action." <u>See</u> Brief for Appellant, pp. 9, 36.

The allegations of ICP's Complaint were more than adequate to give the Government "fair notice" of what ICP's claims were and the grounds upon which it rested.  The judgment from which the Government now appeals worked no unfair or prejudicial surprise upon the Government, on the basis of any asserted complaint deficiency or otherwise.  It should have come as no surprise to the Government that the trial court found that "Customs violated 19 C.F.R. 177.2(b)(2) [*sic* 177.9(b)(2)] when it decided not to apply the Ruling Letter to the Entry, despite the conformance of the Entry."  A48.  That ICP could have more exhaustively identified in its Complaint all of the regulations and statutes implicated by Customs illegal conduct is not a basis for the reversal the Government is seeking or any other type of appellate relief.

This Court should affirm the relief the trial court granted, either for all of the reasons the trial court granted it, or for fewer or different reasons if this Court were to disagree with any portion of the trial court's reasoning.  So long as the relief was proper under the law and supported by the record, it should be affirmed.  <u>Glaxo Group Ltd. v. TorPharm, Inc.</u>, 153 F.3d 1366, 1371 (Fed.Cir. 1998) ("an appellate court may affirm a judgment of a district court on any ground the law and the record will support so long as that ground would not expand the relief granted").

37

The Government does not even argue that the liquidation of the Entry was proper, or that the relief of requiring reliquidation of the Entry and refund of the excess duties paid plus interest was improper under the facts or the law. The Government only argues that the trial court should not have found that the Notice of Action violated Section 1625(c). Because the Government's arguments are without merit, this Court should affirm the judgment of the trial court in its entirety, but at the bare minimum, those portions of the judgment that have not even been challenged should be affirmed.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court should be affirmed in its entirety.

Respectfully submitted,


/s/Gregory H. Teufel
Gregory H. Teufel, Esq.
Jeremy L.S. Samek, Esq.

Counsel for Plaintiff-Appellee
International Custom Products, Inc.

## **PROOF OF SERVICE PURSUANT TO RULE 25(d)**

I, Gregory H. Teufel, hereby certify that on July 24, 2013, I caused to be served a true and correct copy of the foregoing Corrected Brief for Plaintiff-Appellee International Custom Products, Inc. electronically.  This filing was served electronically to all parties by operation of the Court's electronic filing system.

/s/ *Gregory H. Teufel*
Gregory H. Teufel, Esq.
Counsel for Plaintiff-Appellee

## <u>CERTIFICATE OF COMPLIANCE PURSUANT TO RULE 32(a)(7)</u>

I hereby certify that, pursuant to Fed. R. App. P. 32(a)(7)(C), the foregoing brief of Appellants complies with the type-volume limitations and is proportionally spaced and has typeface of 14 points.  In preparing this certification, I relied on the word processing system used to prepare the forgoing brief, which indicated a total word count of 9,326 words.

/s/ *Gregory H. Teufel*
Gregory H. Teufel, Esq.
Counsel for Plaintiff-Appellee